**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| iFLY HOLDINGS LLC, | CIVIL ACTION NO. 2:14-CV-01080-JRG-RSP |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| INDOOR SKYDIVING GERMANY GMBH, | |
| Defendant. | |

## DEFENDANT'S RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND, ALTERNATIVELY, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

I.    INTRODUCTION ............................................................................................................ 1

II.   STATEMENT OF ISSUES TO BE DECIDED ................................................................ 2

III.  FACTUAL BACKGROUND .......................................................................................... 2

      A.  Background Of The Dispute ..................................................................................... 2

      B.  Plaintiff iFLY Is Not Located In the Eastern District of Texas ................................ 6

      C.  Defendant ISG Is Not Located in the Eastern District of Texas ............................... 6

      D.  The Non Party Witnesses And Documents Are in Arizona ....................................... 7

IV.   LEGAL ARGUMENT .................................................................................................... 9

      A.  Motion to Dismiss for Lack of Personal Jurisdiction ............................................... 9

          1.  ISG Is Not Subject to General Jurisdiction in Texas ........................................ 10

          2.  ISG Is Not Subject to Specific Jurisdiction in Texas ....................................... 10

              a.  ISG Did Not Purposively Direct Activities Into Texas ............................... 10

              b.  The Claims Do Not Arise Out Of Infringement in Texas ............................ 12

                  i.   There Has Been No Offer To Sell An Accused Device In Texas .............. 12

                  ii.  There Has Been No Sale of An Accused Device In Texas ...................... 13

              c.  The Assertion of Personal Jurisdiction By A Texas Court Does Not
                  Comport With FairPlay And Substantial Justice ........................................ 17

      B.  Opposed Motion to Transfer Venue to the District of Arizona ............................... 18

          1.  This Case Could Have Been Brought in the District of Arizona ......................... 19

          2.  The Private Interest Factors Favor Transfer .................................................... 20

              a.  Ease of Access to Sources of Proof Favors Transfer .................................. 20

              b.  The Availability of Compulsory Process Favors Transfer ........................... 22

              c.  The Convenience/Cost of Attendance Favors Transfer ............................... 24

              d.  "Other Practical Problems" Favor Transfer ............................................... 26

3. The Public Interest Factors Favor Transfer to Arizona .............................................. 27

    a. Administrative Difficulties Flowing From Court Congestion Is Neutral ............ 27

    b. The Local Interest Factor Favors Transfer ........................................................... 27

    c. Familiarity With The Governing Law Favors Transfer ....................................... 28

    d. The Avoidance of Unnecessary Conflict of Laws Favors Transfer .................... 29

V.  CONCLUSION ............................................................................................................... 29

TABLE OF AUTHORITIES

Page

**CASES**

*AFTG-TG LLC v. Nuvoton Tech. Corp,*
  689 F.3d 1358, 1360 (Fed. Cir. 2012) ........................................................ 9, 10

*Akro Corp. v. Luker*,
  45 F.3d 1541, 1543 (Fed. Cir. 1995) .............................................................. 10

*Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*,
  552 F.3d 1324, 1329, 1333 n. 2 (Fed. Cir. 2008) ..................................... 10, 17

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558, 1570-71 (Fed. Cir. 1994) ........................................................ 15

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462, 475 (1985) ........................................................................... 11, 17

*Commonwealth Scientific and Industrial Research Organization v. Real
  Communications, Inc.*,
  Case No. 6:12-cv-00842-LED, Dkt. No. 49, at 5-7 (E.D. Tex., Aug. 8, 2014) ............... 12

*Daimler AG v. Bauman*,
  131 S. Ct. 2846, 2851 (2011) ......................................................................... 10

*Fuji Photo Film Co. v. Lexar Media, Inc.*,
  415 F. Supp.2d 370, 375 (S.D.N.Y. 2006) ..................................................... 26

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501, 508-09 (1947) .......................................................................... 27

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
  769 F.3d 1371, 1381(Fed. Cir. 2014) ............................................... 13, 14, 15

*Herman v. Cataphora, Inc.*,
  730 F.3d 460, 464 n.1 (5th Cir. 2013) ........................................................... 18

*HollyAnne Corp. v. TFT, Inc.*,
  199 F.3d 1304, 1305 (Fed. Cir. 1999) ............................................... 12, 13, 18

*In re Genentech, Inc.*,
  566 F.3d 1338, 1345 (Fed. Cir. 2009) ............................................... 20, 23, 24

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194, 1198 (Fed. Cir. 2009) ............................................... 18, 19, 20

*In re TS Tech USA Corp.*,
  551 F.3d 1315, 1320-21 (Fed. Cir. 2008) ....................................................... 24, 28

*In re Volkswagen AG*,
    371 F.3d 201, 203 (5th Cir. 2004) ............................................................. 18, 19, 24, 27

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304, 314-15 (5th Cir. 2008) ................................................................ 19, 20, 25

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) .............................................................................................................. 9

*ION, Inc. v. Sercel, Inc.*,
    Case No. 5:06-cv-236-DF, 2010 WL 3768110, at *4 (E.D. Tex., Sep. 16, 2010) ........... 16

*Laitram v. Hewlett-Packard Co.*,
    120 F.Supp. 2d 607, 609-10 (E.D. La. 2000) .................................................................... 26

*Lake Cherokee Hard Drive Technologies, L.L.C. v. Marvell Semiconductor, Inc.*,
    964 F.Supp.2d 653, 657 (E.D. Tex. 2013) ........................................................................ 16

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282, 1319 (Fed. Cir. 2005) ............................................................................... 15

*Odom v. Microsoft Corp.*,
    596 F.Supp.2d 995, 1002 (E.D. Tex. 2009) ...................................................................... 24

*Princeton Digital Image Corp. v. Facebook, Inc.*,
    Case No. 2:11-cv-00400-JRG, 2012 WL 3647182, at *2-3 (E.D. Tex., Aug. 23, 2012) . 12

*Proshot Golf v. Leading Edge Techs.*,
    Case No. 3:96-cv-1906-D, 1996 WL 673265, at *2 (N.D. Tex. Oct. 31, 1996)............... 26

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
    617 F.3d 1296, 1309 (Fed. Cir. 2010) .................................................................... 13, 15

## STATUTES

28 U.S.C. § 1338(a) .................................................................................................................. 19

28 U.S.C. § 1391(c)(3)............................................................................................................... 19

28 U.S.C. § 1404(a) ............................................................................................................. passim

28 U.S.C. § 1406(a) .................................................................................................................. 18

35 U.S.C. § 271(a) ........................................................................................................ 12, 13, 16

## OTHER AUTHORITIES

Fed. R. Civ. P. 45(c)(1)(A) ................................................................................................. 23, 24

Fed. R. Civ. P. 45(c)(1)(B) ................................................................................................... 9, 23

Uniform Commercial Code Article § 2-106 ........................................................................... 15

## I.    INTRODUCTION

Defendant Indoor Skydiving Germany GmbH ("ISG") respectfully submits this motion to dismiss for lack of personal jurisdiction and, alternatively, to transfer this action to the District of Arizona pursuant to 28 U.S.C. § 1404(a).

ISG is not subject to personal jurisdiction in this Court.  The Amended Complaint alleges that a single accused product, which has not yet been built—a wind tunnel to be used in an indoor skydiving simulator—has been sold or "offered for sale" in Arizona.  Thus, to the extent that ISG has directed activities toward the United States, those activities have been directed to Arizona, not Texas.  Additionally, because an "offer for sale" and/or "sale" occurs at the place of the contemplated sale—here, Arizona—the required nexus for specific personal jurisdiction in Texas is missing.  Finally, the exercise of jurisdiction by Texas is unreasonable and unfair.  The "center of gravity" for this case is Phoenix, Arizona.[1]  The alleged infringement can only have occurred in Arizona, through a business created by Arizona residents.  The project is being planned and designed by Arizona companies, to be built on land owned by an Indian Community in Arizona and, if built, will be constructed, staffed and frequented by Arizona residents.  There is no such factual connection between this case and the State of Texas.

If the Court finds that ISG is subject to personal jurisdiction in Texas, this case should be transferred to the District of Arizona; a clearly more convenient forum for the resolution of this dispute.  As the Amended Complaint makes clear, the accused product is destined for Arizona.  None of the parties, the documents, or the witnesses is located in East Texas.[2]  On the other hand, the District of Arizona is home to, and clearly more convenient for, almost all non-party witnesses, including the members of the Salt River Pima-Maricopa Indian Community.  Arizona

---

[1] The proposed facility is to be located on tribal land in Scottsdale, Arizona, which borders Phoenix, Arizona to the east, and is considered part of the greater Phoenix area.  For simplicity, the location of the accused infringing facility will be described as Phoenix, Arizona.

[2] During meet and confer, iFLY could not identify a single witness or document located in the Eastern District of Texas.  Declaration of Rick Chang ("Chang Decl.") at ¶ 3, attached hereto as Exhibit F.

has a dominant interest in resolving the infringement issues in this case and decisions flowing from this infringement lawsuit will be felt in Phoenix, not Marshall. This Court should let an Arizona jury resolve this dispute because the outcome of this case is important to the citizens of Arizona, but is of absolutely no importance to the citizens of East Texas.

## II.    STATEMENT OF ISSUES TO BE DECIDED

(1)    Whether ISG is subject to personal jurisdiction in the State of Texas?

(2)    Whether the District of Arizona is a clearly more convenient forum to which this case should be transferred pursuant to 28 U.S.C. § 1404(a)?

## III.    FACTUAL BACKGROUND

### A.    Background Of The Dispute

This dispute arises out of the proposed construction of an indoor skydiving simulator on land owned by the Salt River Pima-Maricopa Indian Community near Phoenix, Arizona.

In early 2012, Jason Peters, a professional skydiver, and his friend Gary Schmit, decided to develop an indoor skydiving simulator near Phoenix, Arizona. *See* Declaration of Jason Peters at ¶ 3 ("Peters Decl."), attached hereto as Exhibit A; Declaration of Gary Schmit at ¶ 3 ("Schmit Decl."), attached hereto as Exhibit B. Both men are Arizona residents; Peters lives in Eloy, Arizona, and Schmit lives in Phoenix, Arizona. Peters Decl. at ¶ 2; Schmit Decl. at ¶ 2.

On September 20, 2012, Peters contacted Boris Nebe, a German citizen, whom he had known since 1997 when Nebe attended a Lufthansa flight training center near Phoenix. Peters Decl. at ¶ 4; Declaration of Boris Nebe at ¶ 5 ("Nebe Decl."), attached hereto as Exhibit D. Peters sent Nebe (who, at the time, was working at ISG) a Facebook message from Arizona, saying he would like to talk to Nebe about a possible indoor skydiving project. Peters Decl. at ¶ 4; Nebe Decl. at ¶ 6. ISG sent a Non-Disclosure Agreement to Peters, in Arizona. Peters Decl. at ¶ 4; Nebe Decl. at ¶ 7. Peters signed and returned the NDA. Peters Decl. at ¶ 4; Nebe Decl. at ¶ 7. Those discussions or document exchanges occurred to and from Arizona, not Texas. Peters Decl. at ¶ 4; Nebe Decl. at ¶ 7.

2

In July 2013, Peters and Schmit traveled to Oshkosh Wisconsin to attend an airshow and to meet with a possible investor for their planned business. Peters Decl. at ¶ 5; Schmit Decl. at ¶ 4. While at the air show, a mutual friend introduced them to Max Reising. Peters Decl. at ¶ 5; Schmit Decl. at ¶ 4. Max Reising lives in Southlake, Texas (which is in the Northern District of Texas). Declaration of Max Reising at ¶ 2 ("Reising Decl."), attached hereto as Exhibit E. While in Wisconsin, they discussed the possibility of Riesling investing in the indoor skydiving simulator in Phoenix. Peters Decl. at ¶ 5; Schmit Decl. at ¶ 4; Reising Decl. at ¶ 3. Thereafter, the three men had multiple telephone discussions and a few in-person meetings, primarily in Arizona, in furtherance of developing the project. Peters Decl. at ¶ 6; Schmit Decl. at ¶ 5, Reising Decl. at ¶ 4. Peters told Nebe about his and Schmit's introduction to Reising and about their plans to include Reising in the Phoenix project. Nebe Decl. at ¶ 9. Peters, Schmit, Reising and Nebe had a few Skype calls to discuss the project. Nebe Decl. at ¶ 10.

In November 2013, Nebe sent, and Reising signed, an NDA for the purpose of sharing information needed to create a cost estimate for the construction of the Arizona facility. Reising Decl. at ¶ 6. ISG sent this information to Reising's email address, but as Reising travels for business, Reising Decl. at ¶ 5, ISG did not know where Reising was when he received or reviewed the documents. Nebe Decl. at ¶ 9. Regardless, at this point in time, ISG had not offered to sell, and Peters, Schmit and Reising had not offered to buy, an ISG wind tunnel. Nebe Decl. at ¶ 6; Reising Decl. at ¶ 9.

Peters shared his business idea with another professional skydiver, Andy Malchiodi, who lives and works in Lake Elsinore, California. *See* Declaration of Andy Malchiodi at ¶¶ 2, 3 ("Malchiodi Decl."), attached hereto as Exhibit C; Peters at ¶ 6. Peters, Schmit, Malchiodi and Reising formed a partnership. Peters Decl. at ¶ 9; Schmit Decl. at ¶ 12; Malchiodi at ¶ 5; Reising Decl. at ¶ 6. When the partnership, FliteShop Phoenix LP, was formed the building that would house the indoor skydiving simulator was not yet built and, therefore, no business address existed to which mail could be sent. Accordingly, Reising was tasked with creating a business shell, which he created in Texas where he lives. Reising Decl. at ¶ 7. FliteShop Phoenix, LP

3

does not have a physical location; it has no assets, liabilities, employees, or document servers. Reising Decl. at ¶ 7. The newly formed entity does not even have a formal partnership agreement in place. Reising Decl. at ¶ 7. Reising also formed two holding companies, PHZ Genpar and Armor Capital LLC.[3] Reising Decl. at ¶ 8. PHZ Genpar has no assets, and Armor Capital merely holds the trademark for the FliteShop brand. Reising Decl. at ¶ 8. None of these entities conducts business in Texas. Reising Decl. at ¶ 8. Instead, to the extent these holding companies can be said to be conducting any business at all, that business is conducted solely in Arizona. Reising Decl. at ¶ 8.

Thereafter, Peters and Schmit began looking for a suitable location for the indoor skydiving simulator. Peters Decl. at ¶ 7; Schmit Decl. at ¶ 6. The only locations they considered were near Phoenix. Peters Decl. at ¶ 7; Schmit Decl. at ¶ 6. Schmit was given primary responsibility for finding available land, and he engaged a Phoenix-area real estate broker to assist him. Schmit Decl. at ¶ 6. Eventually, Peters and Schmit settled on a lot in Scottsdale, Arizona, owned by the Salt River Pima-Maricopa Indian Community. Schmit Decl. at ¶ 6. The selected parcel is in an "entertainment district" created by the tribe, plans for which include a casino, an aquarium, a butterfly museum, theatres, a waterpark, and dozens of restaurants and hotels. Schmit Decl. at ¶ 7. The indoor skydiving simulator, known as FliteShop, is an integral component of the entertainment district, and Schmit has been working extensively with the tribe to finalize the project. Schmit Decl. at ¶ 7.

Schmit, who is also primarily responsible for marketing, oversaw the development of a website for the business. Schmit Decl. at ¶ 10. The website announced, in April 2014, the planned FliteShop indoor skydiving facility in Arizona. Schmit Decl. at ¶ 10. All marketing efforts for the proposed FliteShop project, including the website, have been, and will continue to be, narrowly targeted to the greater Phoenix market. Schmit Decl. at ¶ 11.

---

[3] iFLY's complaint wrongly contends that ISG has conducted business or entered into an agreement with FliteShop PHZ Genpar and/or Armor Capital LLC. To clarify, ISG has not conducted any business with FliteShop PHZ Genpar or Armor Capital LLC. Nebe Decl. at ¶ 11.

4

In December 2013, Peters requested and received a proposal and sample contract from ISG for the construction of a vertical wind tunnel near Phoenix. Peters Decl. at ¶ 8; Nebe Decl. at ¶ 10. To that point, FliteShop Phoenix LP partners and ISG were discussing the terms of a potential agreement, but no agreement had been reached. Peters Decl. at ¶ 8; Schmit Decl. at ¶ 12; Reising Decl. at ¶ 9; Nebe Decl. at ¶ 10.

On July 7, 2014, Peters flew to Germany to meet with ISG. Peters Decl. at ¶ 10. Schmit, Malchiodi, and Reising flew to Germany the following day. Schmit Decl. at ¶ 13; Malchiodi Decl. at ¶ 4; Reising Decl. at ¶ 10. They met with ISG at its offices in Gladbeck, Germany to negotiate the terms of a potential future sale. Peters Decl. at ¶ 10; Schmit Decl. at ¶ 13; Malchiodi Decl. at ¶ 4; Reising Decl. at ¶ 10; Nebe Decl. at ¶ 11. The parties reached an agreement that allowed, but did not require, FliteShop Phoenix LP to buy an ISG wind tunnel for use in the Arizona project. Peters Decl. at ¶ 10; Schmit Decl. at ¶ 13; Malchiodi Decl. at ¶ 4; Reising Decl. at ¶ 10; Nebe Decl. at ¶ 11. To date, no formal order has been placed. Peters Decl. at ¶ 10; Schmit Decl. at ¶ 13; Malchiodi Decl. at ¶ 4; Reising Decl. at ¶ 10; Nebe Decl. at ¶ 11.

In September 2014, Alan Metni, CEO of SkyVenture LLC, parent company of plaintiff iFLY Holdings LLC ("iFLY"), called Reising on the pretext that he wanted to discuss SkyVenture's intent to build a competing wind tunnel across the street from FliteShop's planned facility in Phoenix. Reising Decl. at ¶ 11. During the call, Metni urged Reising to sever all ties with his current partners and his business relationship with ISG, and to instead invest in a skydiving simulator made by SkyVenture. Reising Decl. at ¶ 11. Metni told Reising that he should team up with SkyVenture "because there is no way an ISG tunnel is going to be operating in the United States" because "[his] patents block that." Reising Decl. at ¶ 11. Metni stated that iFLY's litigation counsel projected that litigation by iFLY would cost ISG at least $2.5 million, and that ISG would not pay that kind of money to defend Reising if a suit was filed. Reising Decl. at ¶ 11.

5

On November 26, 2014, iFLY filed its Original Complaint for Patent Infringement, alleging ISG infringes two iFLY patents by selling or offering to sell a wind tunnel to the FliteShop partners for use in Phoenix Arizona. *See* Dkt. No. 1. On March 6, 2015, iFLY filed its First Amended Complaint withdrawing one of the asserted patents. *See* Dkt. No. 16. For the remaining patent, U.S. Patent No. RE43,028, iFLY has asserted 7 independent apparatus claims. *See* Dkt. No. 16 at ¶ 33. The patents-in-suit have not been previously litigated in this Court, and the Court is, presumably, not familiar with the patent or the technology at issue.

### B.   Plaintiff iFLY Is Not Located In the Eastern District of Texas

iFLY is a Delaware corporation with a principal place of business in Austin, Texas. Dkt. No. 16 at ¶ 1. Started in 1998 as SkyVenture, LLC, iFLY has 35 locations around the world in the U.S., Canada, Europe and Asia. *See* www.iFLYworld.com/what-is-iFLY/about-us. iFLY is a global company, with offices and employees scattered across the United States, Europe and Asia. *Id.* However, it does not appear to have any facilities or offices in the Eastern District of Texas. *See* www.iFLYworld.com/find-a-tunnel/.

### C.   Defendant ISG Is Not Located in the Eastern District of Texas

ISG is a German limited liability company with its principle place of business in Gladbeck, Germany. Nebe Decl. at ¶ 3. ISG makes, markets and sells wind tunnels for use in indoor skydiving simulators in Europe and Asia. Nebe Decl. at ¶ 3. All of ISG's research and development takes place in Germany. Nebe Decl. at ¶ 3. To date, there are no ISG wind tunnels in the United States. Nebe Decl. at ¶ 3. Thus, all potentially relevant infringement documents and witnesses in ISG's possession are located in Germany. Nebe Decl. at ¶ 16.

ISG has no presence in Texas. ISG has no offices or facilities in Texas, no bank accounts in Texas, no real estate in Texas, no employees or documents located In Texas, and has no registered agent in Texas. Nebe Decl. at ¶ 4. ISG has never filed a lawsuit in Texas. Nebe Decl. at ¶ 4. ISG does not design or manufacture any products in the Eastern District of Texas. Nebe Decl. at ¶ 4. ISG has never met with anyone in Texas for the purpose of selling or offering to sell the accused wind tunnel. Nebe Decl. at ¶ 4.

ISG did not reach out to Texas in an attempt to sell a wind tunnel.  Nebe Decl. at ¶ 4. Instead, Jason Peters, from Arizona, contacted ISG about buying an ISG wind tunnel to be built in the Phoenix area.  Nebe Decl. at ¶ 6.  Throughout discussions regarding the Phoenix wind tunnel, ISG's primary contact has been Peters.  Nebe Decl. at ¶ 8.  Peters resides in Arizona and, to the best of ISG's knowledge, maintains documents he has received from ISG in Arizona. Nebe Decl. at ¶ 8.  ISG's agreement with Peters and his partners in FliteShop is that if FliteShop decides to purchase a wind tunnel from ISG, it can only use that wind tunnel within 75 kilometers of Phoenix, Arizona.  Nebe Decl. at ¶ 13.  ISG has never been asked to sell and has never sold, nor has any current plans to sell, a wind tunnel for use in Texas.  Nebe Decl. at ¶ 4.

### D.   The Non Party Witnesses And Documents Are in Arizona

Non-party Jason Peters is an Arizona resident who lives and works in Eloy, Arizona. Peters Decl. at ¶ 2.  It is much more convenient for Peters to attend deposition and trial in Phoenix, Arizona.  Peters Decl. at ¶ 12.  Peters does not regularly travel to East Texas and he would incur substantial expense, lost time at work, and other personal inconvenience if forced to travel to East Texas for trial.  Peters Decl. at ¶ 12.  All relevant documents in Peters's possession are located in his home office in Eloy, Arizona. Peters Decl. at ¶ 12.  Peters is likely to be an important witness regarding the genesis of the Phoenix project, the communications that underlie iFLY's contentions pertaining to the purported sale and/or offer to sell by ISG, the potential damages, if any, and the public interest facts that must be weighed in deciding the appropriateness of injunctive relief.  Peters Decl. at ¶¶ 3-11.

Non-party Gary Schmit is also an Arizona Resident.  Schmit Decl. at ¶ 2.  Schmit lives and is self-employed in Phoenix, Arizona.  Schmit Decl. at ¶ 2.  It is much more convenient for Schmit to attend deposition and trial in Phoenix, Arizona.  Schmit Decl. at ¶ 15.  Schmit does not regularly travel to East Texas and he would incur substantial expense, lost time, and other personal inconvenience if forced to travel to East Texas for trial.  Schmit Decl. at ¶ 15.  All relevant documents in Schmit's possession are located in his home office in Phoenix, Arizona. Schmit Decl. at ¶ 15.  Schmit is likely to be an important witness regarding the genesis of the

Phoenix project, the communications that underlie iFLY's contentions pertaining to the purported sale and/or offer to sell by ISG, the potential damages, if any, and marketing efforts pertaining to FliteShop, in particular the limited territorial scope of the Phoenix project. He will also have information about the public interest facts that must be weighed in deciding the appropriateness of injunctive relief, including the importance of the Phoenix wind tunnel project to the entertainment district planned by the Salt River Pima-Maricopa Indian Community.

Non-party Andy Malchiodi is a California Resident who lives and works in Lake Elsinore, California. Malchiodi Decl. at ¶ 6. It is more convenient for Malchiodi to attend trial in Phoenix, Arizona. Malchiodi Decl. at ¶ 6. Malchiodi does not regularly travel to East Texas and he would incur substantial expense, lost time at work, and other personal inconvenience if forced to travel to Marshall for trial. Malchiodi Decl. at ¶ 6. All relevant documents in Malchiodi's possession are located in his home office in California. Malchiodi Decl. at ¶ 6. Malchiodi is likely to have relevant information regarding the genesis of the Phoenix project, including the communications that underlie iFLY's contentions pertaining to the purported sale and/or offer to sell by ISG, and the potential damages, if any, caused by the alleged infringement.

Non-party Max Reising resides in Southlake, Texas, which is in the Northern District of Texas. Reising Decl. at ¶ 2. Reising, however, often travels to Phoenix for business, making Phoenix a substantially more convenient venue for Reising than Marshall, Texas. Reising Decl. at ¶ 12. Moreover, Reising agrees to voluntarily appear for trial in the District of Arizona. Reising Decl. at ¶ 12. All documents related to the Phoenix project that are in Reising's possession are located in his home office in Southlake, Texas (more than 100 miles from Marshall), or are located in Phoenix, Arizona. Reising Decl. at ¶ 12. Reising is likely to have relevant information regarding the planning, financing, and development of the project and the importance of the project to the members of the Salt River Pima-Maricopa Indian Community.

Members of the Salt River Pima-Maricopa Indian Community are important non-party witnesses who will have critical testimony regarding the impact that an injunction may have on the tribe's effort to develop a first-class entertainment district that will result in significant

benefits for its members. Schmit Decl. at ¶ 9. The Salt River Pima-Maricopa Indian Community is located in Scottsdale, Arizona. Schmit Decl. at ¶¶ 6, 7. Their individual testimony, and that of the tribe as an entity, can only be compelled within Arizona's borders. *See* Fed. R. Civ. P. 45(c)(1)(B).

Because the accused product has not yet been built, the engineers, architects and planners of the FliteShop project may have relevant information regarding the planned facility. These companies include Hardwick Engineering, located in Phoenix, Arizona, and ARUN Structural Engineering Consultants, located in Gilbert, Arizona. Neither of these companies appears to have offices or employees in East Texas.

## IV.    LEGAL ARGUMENT

### A.    Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiff iFLY bears the burden of making a *prima facie* showing that ISG is subject to personal jurisdiction in Texas. *See AFTG-TG LLC v. Nuvoton Tech. Corp,* 689 F.3d 1358, 1360 (Fed. Cir. 2012). In ruling on this motion, the Court must accept uncontroverted allegations in the Complaint as true and resolve factual conflicts in iFLY's favor, but it need not accept "bare formulaic accusation[s]" pleaded in the Amended Complaint. *Id.* at 1360, 1365.

A court can exercise personal jurisdiction over an out-of-state defendant if the forum state's long-arm statute permits jurisdiction without violating federal due process. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). In Texas, where the forum's long-arm statute is co-extensive with the limits of constitutional due process, personal jurisdiction exists where a defendant has "certain minimum contacts with [the jurisdiction] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316.

Personal jurisdiction may be general or specific. General jurisdiction exists where the defendant has "'continuous and systematic contacts" with the forum state such that the exercise of jurisdiction remains fair even when the cause of action has no relationship with those contacts. *AFTG-TG,* 689 F.3d at 1360. Specific jurisdiction exists when the defendant has purposely

directed his activities into the forum and the litigation results from alleged injuries that "arise out of" or "relate to" those activities. *Id.*

In patent cases, the law of the Federal Circuit controls. *Id.* at 1364. The Federal Circuit has distilled the specific jurisdiction question into a three-part test, which asks "(1) whether the defendant purposefully directed activities at the forum's residents; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Id.* at 1361; *see also Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

As discussed below, even if the allegations of the Complaint are taken as true, they do not satisfy the Federal Circuit's requirements for Texas's exercise of personal jurisdiction over ISG.

### 1.    ISG Is Not Subject to General Jurisdiction in Texas

The Amended Complaint does not allege that ISG is subject to general jurisdiction in Texas, nor can it because ISG's affiliations with the State are not so "continuous and systematic" as to render it "essentially at home" in the forum. *See Daimler AG v. Bauman*, 131 S. Ct. 2846, 2851 (2011).

### 2.    ISG Is Not Subject to Specific Jurisdiction in Texas

#### a.    *ISG Did Not Purposively Direct Activities Into Texas*

The first prong of the *Akro* test is not met because ISG has not purposefully directed its activities at Texas residents.[4]    Importantly, in evaluating the first prong of the *Akro* Test, the Court must focus on the "actions by the defendant *[it]self*," and be mindful that "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1329, 1333 n.2 (Fed. Cir. 2008) (internal citation omitted) (emphasis in original). The purposeful availment requirement ensures that a defendant will not be hauled into a

---

[4] This case differs from many infringement cases in that there is no allegation that an accused infringing product was put into the stream of commerce with knowledge that the accused product would be sold in Texas.

jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

ISG did not direct any allegedly infringing actions toward Texas. The plan to build an indoor skydiving simulator near Phoenix using an ISG product was formulated by Peters and Schmit in Arizona. Peters Decl. at ¶¶ 3, 4; Schmit Decl. at ¶ 3. At Peters's request, ISG sent them, in Arizona, information about ISG's products and discussed with them the possibility of supplying an ISG wind tunnel for their proposed project. Peters Decl. at ¶ 4; Nebe Decl. at ¶ 7. The initial business planning was done in Arizona by Peters and Schmit prior to Reising's involvement. Peters Decl. at ¶¶ 3, 5; Schmit Decl. at ¶¶ 3, 4.

Peters and Schmit worked on the project for half a year and had a business plan in place before they met Reising. Peters Decl. at ¶¶ 3, 5; Schmit Decl. at ¶¶ 3, 4. Peters and Schmit worked on two fronts—on one front they were communicating with ISG to get design and cost information, and on the other front they were communicating with Reising about the physical development and cost of the project. Peters Decl. at ¶¶ 4-6; Schmit Decl. at ¶¶ 5-9. If any communications were specifically directed to Reising in Texas, they were by Peters and Schmit, not ISG.

With respect to ISG's interactions with Reising and Texas, none of the discussions or negotiations that led to ISG's agreement with FliteShop Phoenix LP took place in Texas. Nebe Decl. at ¶ 14. No ISG managing agent or employee has ever traveled to Texas for any purpose related to the proposed FliteShop project in Phoenix. Nebe Decl. at ¶ 14. FliteShop Phoenix LP, although a Texas Limited Partnership, was formed solely for the purpose of conducting the business associated with the development of the skydiving simulator in Arizona. Peters Decl. at ¶ 9; Schmit Decl. at ¶ 12; Malchiodi Decl. at ¶ 5; Reising Decl. at ¶ 6. As such, it is the unilateral activity of third parties that cannot be attributed to ISG. In fact, ISG's contacts with Texas are limited to sending a few emails to Reising, without knowledge of whether Reising was located in Texas when the emails were read. Nebe Decl. at ¶ 9. All other activities undertaken

11

by ISG related to the Phoenix project were either in Germany or directed to the partners in Arizona.

ISG's limited and attenuated contacts with Texas are insufficient for the Court to exercise personal jurisdiction over it. *See HollyAnne Corp. v. TFT, Inc*., 199 F.3d 1304, 1305 (Fed. Cir. 1999) (defendant's one sales representative located in the forum, and one presentation of the allegedly infringing product made by defendant's officers in the forum, were insufficient to show purposeful availment); *Princeton Digital Image Corp. v. Facebook, Inc*., Case No. 2:11-cv-00400-JRG, 2012 WL 3647182, at *2-3 (E.D. Tex., Aug. 23, 2012) (holding company that did no business in Texas was not subject to personal jurisdiction in Texas); *Commonwealth Scientific and Industrial Research Organization v. Real Communications, Inc*., Case No. 6:12-cv-00842-LED, Dkt. No. 49, at 5-7 (E.D. Tex., Aug. 8, 2014) (applying minimum contacts analysis and finding that some sales support activity in the State was not sufficient for purpose of jurisdiction when there was no dispute that defendant did not place a product into the steam of commerce.).

### b.    *The Claims Do Not Arise Out Of Infringement in Texas*

*Akro*'s second prong requires that the cause of action arise out of or directly relate to the defendant's activities in the forum state. *HollyAnne*, 199 F.3d at 1308. The allegations of the Amended Complaint are specific and narrow: iFLY alleges ISG infringes iFLY's apparatus claims by selling or offering to sell the accused wind tunnel. *See* Dkt. No. 16 at ¶¶ 30-34. Thus, for there to be specific personal jurisdiction over ISG in Texas, iFLY "would have to allege that [ISG] did one of those listed activities *in [Texas]*." *HollyAnne*, 199 F.3d at 1308 (emphasis added). Neither the alleged sale nor the alleged offer for sale is for a product to be delivered to or used *in Texas*. Thus, the required nexus between iFLY's pleaded causes of action the State of Texas is absent.

### i.    There Has Been No Offer To Sell An Accused Device In Texas

There has been no "offer for sale" of an accused product in the State of Texas. Section 271(a) of the Patent Act was amended in 1994 to include an "offer for sale" as a distinct act of

infringement.[5]   For more than a decade thereafter, against the backdrop of the strong presumption against extraterritorial reach of the United States patent laws, courts were inconsistent in defining, for the purpose of jurisdiction, where an offer for sale was made. *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1309 (Fed. Cir. 2010).   Whereas some courts answered the jurisdictional question by looking to the location where the alleged "offer for sale" was made, other courts looked to the location of the contemplated sale.   *Id*.   The Federal Circuit resolved the issue in *Transocean*, decisively holding that when infringement is premised on "offer to sell" under § 271(a), the *location of the contemplated sale controls*.   *Id.* at 1309 (emphasis added).   *See also, Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 769 F.3d 1371, 1381(Fed. Cir. 2014) (location of the contemplated sale controls location of infringement premised on "offer for sale.").

Here, the Amended Complaint alleges an offer for sale that will indisputably result in actual or anticipated performance in Arizona.   Because there has been no "offer for sale" of a product to be delivered *in Texas*, the allegations of the Amended Complaint pertaining to "offer for sale" do not "arise out of" ISG's contacts with Texas.   *HollyAnne*, 199 F.3d at 1308 (complaint must allege infringing activities in forum state); *Transocean,* 617 F.3d at 1309 (offer for sale occurs where contemplated sale is to occur).

### ii.    There Has Been No Sale of An Accused Device In Texas

The alleged infringement based on sale of an accused product does not arise from or relate to any infringement in the State of Texas.   While the patent statute does not define the meaning of a "sale" for purposes of direct infringement under § 271(a), the Federal Circuit has provided guidance on how to determine if, and where, an infringing sale has taken place.

---

[5] The Amended Complaint also alleges there has been a "contract for sale."   But, 35 U.S.C. 271(a) does not include a "contract to sell" as an infringing act.   Thus, for the purpose of the infringement analysis, the "contract for sale" allegations are the same as the "offer for sale" infringement allegations.   *See e.g. Halo Electronics*, 769 F.3d at 1377-81 (considering facts of contract negotiations under "sale" and/or "offer for sale" prongs of § 271(a)).

To determine <u>if</u> a sale or contract for sale occurred, the *Halo* Court instructed courts to look beyond pricing negotiations and projected demand to determine if there was a "firm agreement to buy and sell." *Halo Electronics*, 769 F.3d at 1379.

To determine <u>where</u> a sale occurred, courts consider where the transfer of title or property takes place, the location of the actual or anticipated sale, where the final formation of the contract occurred, and where negotiations and contracting occurred. *Id..*

In this case, there has been no sale of an accused product. On this point, *Halo Electronics* is instructive. In *Halo,* plaintiff argued that defendant "sold" an infringing product in the United States because it engaged in certain negotiating and contracting activities for the accused products in the United States which resulted in sales overseas. *Id.* at 1377. The Court disagreed. While acknowledging that pricing negotiations, contracting, and marketing activities took place in the United States, the Court found those activities were insufficient to constitute a "sale" because they did not lead to a binding contract for sale. *Id.* at 1379, n.1. Instead, the agreement reached by the parties allowed, but did not require, defendant's customer to purchase the accused products at some future time. The Court concluded that no sale occurred because there was no guarantee of a future order. *Id.* at 1377.

Like the facts in *Halo*, in this case there is no guarantee FliteShop will ever purchase an ISG wind tunnel. Nebe Decl. at ¶ 11. The ISG-FliteShop agreement gives FliteShop an option to buy an ISG wind tunnel, but in no way mandates that a sale will occur. Nebe Decl. at ¶ 11. Instead, it is wholly within FliteShop's power to consummate a sale by placing an order in the future. Because there is no guarantee that ISG will actually receive an order, there has been no sale. *Halo Electronics*, 769 F.3d at 1377.

Assuming *arguendo* that there has been a sale of an accused wind tunnel, there is still no nexus between the alleged infringing sale and the State of Texas. All of the facts that must be considered to determine where the alleged sale occurred demonstrate that any purported sale occurred in Arizona, not Texas.

First, "[t]he ordinary meaning of a sale includes the concept of a transfer of title or property." *Halo Electronics*, 769 F.3d at 1379, citing *NTP, Inc. v. Research In Motion, Ltd.,* 418 F.3d 1282, 1319 (Fed. Cir. 2005), and Uniform Commercial Code Article § 2-106. If any sale occurs in this case, it will occur in Arizona where the wind tunnel is shipped, not Texas.

Second, it cannot reasonably be disputed that the location of the contemplated sale is Arizona. Recent case law has established the location of the contemplated sale as the situs of the alleged infringement. For example, in *Transocean*, substantial sales activities related to off-shore oil rigs, including the final formation of a contract encompassing all essential terms, did not result in a sale for purposes of § 271(a). 617 F.3d at 1310. Rather, the Court used the location of the anticipated sale, i.e., where the oil rigs would be delivered, to determine where the sale occurred. *Id*.

In *Halo Electronics*, the Court emphasized that patent infringement generally occurs where infringing sales are made. *See* 769 F.3d at 1378, citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1570-71 (Fed. Cir. 1994). The Court acknowledged its prior decisions held that a sale may occur at multiple locations for the purposes of personal jurisdiction, but it clarified that, for purposes of § 271(a), the location of the sale controls the infringement analysis. *Id.* at 1380. Ultimately, the Court set aside significant evidence of negotiating and contracting activities in the United States[6] and relied on the sales location to determine the site of the allegedly infringing sales. *Id*. at 1379. Although the Federal Circuit in *Transocean* and *Halo* was deciding whether sales occurred in the United States generally—as opposed to a specific place within the United State—the rationale of those decisions applies equally to this case.

The anticipated place of performance under the parties' agreement, assuming FliteShop finally agrees to purchase an ISG wind tunnel, is in Arizona. Nebe Decl. at ¶ 13. The parties'

---

[6] These activities included pricing negotiations with customers, actions of U.S.-based employees who quoted and approved prices for the accused products from the United States, regular meetings with clients in the United States, sending product samples into the United States, and providing post-sale product support in the United States. 769 F.3d at 1375.

agreement specifically requires the accused wind tunnel be built in the Phoenix area.  Nebe Decl. at ¶ 13.  FliteShop cannot, and ISG will not permit, the wind tunnel to be built in any other location, including Texas.  Nebe Decl. at ¶ 13.  Thus, the situs of the alleged sale is Arizona. There is no evidence of a sale, an offer for sale, or even a thought of a sale, in Texas.

Third, to the extent that plaintiff contends there has been a final contract for sale between the parties, the agreement was reached during an in-person meeting in Germany.  Nebe Decl. at ¶ 11.  Thus, looking to the location of the formation of such purported agreement to determine the situs of the allegedly infringing sale necessarily leads to the conclusion that it occurred outside Texas.

Finally, the parties' negotiations are insufficient to conjure up an infringing sale in Texas. The vast majority of the parties' communications occurred in Germany or Arizona.  The most that can be said about ISG's negotiations in Texas is that ISG exchanged emails with Reising, a Texas resident, who may or may not have been in Texas when he received them.  Those limited and attenuated communications do not give rise to a sale in Texas.  *Halo Electronics*, 769 F.3d at 1379 (negotiations alone do not constitute a sale for the purpose of determining whether there has been a sale for purposes of § 271(a)); *Lake Cherokee Hard Drive Technologies, L.L.C. v. Marvell Semiconductor, Inc*., 964 F.Supp.2d 653, 657 (E.D. Tex. 2013) (rejecting argument that negotiation and execution of a product supply agreement constituted a "sale" for purposes of § 271(a), citing *Transocean*, 617 F.3d 1296; *ION, Inc. v. Sercel, Inc*., Case No. 5:06-cv-236-DF, 2010 WL 3768110, at *4 (E.D. Tex., Sep. 16, 2010) (rejecting argument that quoting prices and receiving orders and payment in Houston was sufficient for a finding of infringement in Texas).

Because there has been no "offer for sale" and no sale of an accused device in Texas, the allegations of the Complaint do not "arise out of" or "relate to" ISG's contacts with Texas.  The nexus required for this Court's exercise of personal jurisdiction is entirely absent and, therefore, the second prong of the *Akro* test is not met.

    **c.**    *The Assertion of Personal Jurisdiction By A Texas Court Does Not Comport With FairPlay And Substantial Justice*

Finally, if this Court decides that ISG purposefully established minimum contacts with the State of Texas, those contacts must be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Avocent Huntsville Corp. v. Aten Intern. Co*., 552 F.3d 1324, 1331 (Fed. Cir. 2008), citing *Burger King,* 471 U.S. at 476. Relevant factors include: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Id.*

On the facts of this case, the assertion of personal jurisdiction by a Texas Court is unreasonable. The "center of gravity" for this case is Phoenix, Arizona. No party or non-party witness is located in East Texas. During meet and confer, Plaintiff's counsel could not identify any witnesses or documents located in East Texas. *See* Chang Decl. at ¶ 3. Litigating in this Court will pose an undue and unnecessary burden on important non-party witnesses. Texas has no connection to the infringement allegations of the Amended Complaint. No accused product has ever been shipped to Texas, and there are no plans to do so. It is unfair to ask East Texas residents to serve on a jury to resolve this dispute when neither Texas nor its residents have any interest in alleged infringement by a skydiving simulator to be operated, exclusively, in Phoenix, Arizona.

iFLY's interest in obtaining convenient and effective relief can be met equally in the District of Arizona. The "offer for sale" allegations of the Amended Complaint are sufficient to establish personal jurisdiction in Arizona. iFLY, an international company with one facility in Arizona and at least one other planned, is no stranger to Phoenix. iFLY will be well served by having this case resolved at a location that is more convenient for the non-party fact witnesses,

where the documents are located, and where the jurors have some connection to the community and the events they are asked to consider.

The interstate judicial system's interest in obtaining the most efficient resolution of controversies will be served by allowing Arizona to assert jurisdiction over activities occurring with its boarders. The alleged infringement (if it occurred) occurred in Arizona through a business created by Arizona residents. It involves a facility to be built on land owned by an Indian Community in Arizona, to be designed and constructed by Arizona companies, and will be staffed and frequented by Arizona residents. This Court should decline to exercise personal jurisdiction and let an Arizona Court and jury resolve issues that impact Arizona residents and have no impact on the residents of East Texas.

### B. Opposed Motion to Transfer Venue to the District of Arizona

In the event the Court denies ISG's motion to dismiss for lack of personal jurisdiction, it should transfer this case to the District of Arizona, under §1404(a).[7]

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*"). If that threshold is met, courts then analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

---

[7] Where a court dismisses for want of personal jurisdiction, it cannot order a transfer under 28 U.S.C. § 1404(a). *See Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 n.1 (5th Cir. 2013); *HollyAnne*, 199 F.3d 1304. In the alternative, the court is authorized under 28 U.S.C. § 1406(a) to transfer the action to any district or division in which it could have been brought if the court finds that it is in the interest of justice to transfer the action. *Herman*, 730 F.3d at 466.

The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and ( 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198. The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re Nintendo*, 589 F.3d at 1200.

### 1.     This Case Could Have Been Brought in the District of Arizona

The threshold question is whether this suit could have been brought in the District of Arizona. *In re Volkswagen II*, 545 F.3d at 312. This action could have been brought in the District of Arizona because that Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a). The District of Arizona—as the only place where the allegedly infringing product can be argued to have been offered for sale—can exercise personal jurisdiction over ISG.[8] *Transocean*, 617 F.3d at 1309; *Halo Electronics,* 769 F.3d at 1381. Venue is proper in the District of Arizona under 28 U.S.C. § 1391(c)(3).

---

[8] Arizona's long-arm statute, Rule 4.2 of the Arizona Rule of Civil Procedure, allows the exercise of personal jurisdiction over a non-resident to the full extent permitted by the Due Process Clause of the U.S. Constitution.

### 2.    The Private Interest Factors Favor Transfer

The second question under § 1404(a) is whether the interest of justice and convenience of the parties and witnesses justify transfer to Arizona. All four of the private interest factors weigh heavily in favor of a transfer.

### a.    *Ease of Access to Sources of Proof Favors Transfer*

Despite technological advances, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *Id*. This factor will turn upon which party, usually the accused infringer, has the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *Id.* at 314-15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

The ease of access to sources of proof strongly weighs in favor of transferring this action to Arizona. This case differs from those more common infringement cases where products are marketed and promoted nationally and, therefore, can be accessed conveniently in any number of locations. Here, the geographic location of the accused infringing device is specific; the sole accused product will be built, if ever, in Phoenix, Arizona. The accused infringing device—a wind tunnel built inside a building—cannot be physically inspected by an Eastern District jury at trial. It can, however, be made available for inspection by a Phoenix jury.

Documents concerning the conception and planning for FliteShop's proposed indoor skydiving simulator are located near Phoenix. The idea for the planned skydiving simulator came from Arizona partners Peters and Schmit. Peters Decl. at ¶ 3; Schmit Decl. at ¶ 3. The company business plan and all early communication with ISG were done by the Arizona partners, and documents concerning the early stages of the project likely reside in Peters's and Schmit's files in Arizona. Peters Decl. at ¶ 12; Schmit Decl. at ¶ 3. Reising was introduced to the project after the business plan was complete. Peters Decl. at ¶¶ 3, 5; Schmit Decl. at ¶¶ 3, 4.

Thus, the initial business plan documents (including documents concerning the initial decision to use ISG's wind tunnel) are located in Arizona, not East Texas.

Documents concerning the design of the accused wind tunnel are located in Germany or in Arizona. State of Arizona and/or the Salt River Maricopa-Pima Indian Community[9] building requirements will dictate the type of technical design documents created for the proposed project. Schmit is responsible for obtaining the required documents and submitting them to the appropriate officials. Schmit Decl. at ¶ 7. All such documents will be generated for and submitted to officials in Phoenix. Schmit Decl. at ¶ 7. The documents required for the project will be prepared with the assistance of FliteShop's architects and engineers, all of whom are located in or near Phoenix. Schmit Decl. at ¶ 8. The inspection and testing of the allegedly infringing device will occur in Arizona. Nebe Decl. at ¶ 15. No such evidence will be located in the Eastern District of Texas.

The accused skydiving simulator, if built, will be operated by Arizona residents Peters and Schmit. Peters Decl. at ¶ 11; Schmit Decl. at ¶¶ 10, 14. Peters will be in charge of the day-to-day operations of the facility. Peters Decl. at ¶ 11. Schmit is responsible for marketing. He estimates that between 85-95% of customers will be first time flyers and/or corporate event customers from the Phoenix area. All marketing efforts for the proposed project have been, and will be, narrowly targeted to the greater Phoenix market. Schmit Decl. at ¶ 11. Additionally, the Salt River Pima-Maricopa Indian Community has provided some early marketing for the FliteShop skydiving simulator. Schmit Decl. at ¶ 11. Those documents are held by the tribe in Scottsdale, Arizona. Schmit Decl. at ¶ 11. There are no operating or marketing documents located in East Texas.

---

[9] The Salt River Pima-Maricopa Indian Community, as an individual sovereign, has its own review and approval process. That community is located at 10005 East Osborn Road in Scottsdale, Arizona; 30 miles away from the District Court in Phoenix and 1,200 miles away from the this Court. Schmit Decl. at ¶ 9. Any documents to be provided by the Salt River Pima-Maricopa Indian Community are much closer to the courthouse in Arizona.

None of ISG's documents are located in East Texas.  Nebe Decl. at ¶ 16.  To the extent that ISG's general design documents are relevant to the Phoenix wind tunnel, those documents are located in Germany or in the files of the FliteShop partners, the Arizona architects and engineers, and/or Salt River Pima-Maricopa Indian Community officials.  Nebe Decl. at ¶ 16; Schmit Decl. at ¶¶ 8, 11.

Plaintiff iFLY's principal place of business is in Austin, Texas.  Dkt. No. 16 at ¶ 1.  To the extent iFLY has relevant documents, they are likely located in the Southern District of Texas, not the Eastern District.  iFLY's damages allegations are likely to focus on the Phoenix market— the only place where it can be said to compete with ISG if the FliteShop project is completed. Plaintiff's documents related to the Phoenix market are likely to be available from iFLY in Eloy, Arizona, or, alternatively, iFLY's Austin headquarters.  None of those documents are likely to be located in the Eastern District of Texas.

The third-party Texas limited liability companies identified in the Amended Complaint as working with ISG will not have relevant documents in the Eastern District of Texas.  The only company with a connection to this case, Fight Shop Phoenix LP, to the extent it can be said to be "located" anywhere, is located in the Northern District of Texas, not this District.  Reising Decl. at ¶ 7.  Moreover, the companies identified in the Amended Complaint exist on paper only; they do not have employees, offices, or servers from which to produce documents in this case. Reising Decl. at ¶ 7.

Because the physical location of the accused product is limited to Phoenix, Arizona, and all potentially relevant documents regarding the project are located either near Phoenix or in Germany, and no sources of proof are located in the Eastern District of Texas, this factor overwhelmingly weighs in favor of transferring to the District of Arizona.

**b.**    ***The Availability of Compulsory Process Favors Transfer***

Transfer is generally favored when the transferee venue has subpoena power over more non-party witnesses.  This factor strongly favors transfer because the majority of key non-party

potential witnesses are located in Arizona.  *See In re Genentech*, *Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.").

This is not a case where the non-party witnesses are "decentralized."  Instead, almost all key non-party witnesses are located near Phoenix.  ISG has identified key non-party witnesses in Section III(D) above.  Those witnesses, with the exception of two, are subject to absolute subpoena power in the District of Arizona.  *See* Fed. R. Civ. P. 45(c)(1)(A).  The Arizona witnesses will likely provide the primary source of evidence regarding the genesis of the Arizona wind tunnel project, the planned design of the project, the operation, marketing, design and function of the wind tunnel to be used in the project, and financial information related to the Phoenix skydiving simulator.  The Arizona witnesses will also have important evidence to provide regarding the planned profitability of the project, and ISG's likely counterclaims.

The Amended Complaint seeks issuance of a permanent injunction in the event ISG is found to infringe any claim of the asserted patent.  In deciding if an injunction is in the public interest, the Court must consider the interests of the Salt River Pima-Maricopa Indian Community and the impact that an injunction may have on the tribe's effort to develop an entertainment district for the benefit of its members.  The Salt River Pima-Maricopa Indian Community members are located near Scottsdale, Arizona.  Their individual testimony, and that of the tribe as an entity, can only be compelled within Arizona's borders.  *See* Fed. R. Civ. P. 45(c)(1)(B).

There are two non-party witnesses who are not resident in Arizona.  Max Reising lives in Southlake Texas, more than 100 miles from Marshall and, therefore, this Court does not have absolute subpoena power over Reising under Rule 45(c)(1)(A).[10]  Another non-party witness, Andy Malchiodi, lives and works in Lake Elsinore, California. Lake Elsinore California is more

---

[10] The presence of single potential witness residing in Texas (and even then, not the Eastern District of Texas), is not a sufficient justification for holding venue in East Texas.  *See Odom*, 596 F.Supp.2d at 1104.

than 100 miles from Marshall and, therefore, this Court does not have subpoena power over Malchiodi under Rule 45(c)(1)(A).  Because neither this Court nor the District of Arizona will have absolute subpoena power over these witnesses, they are neutral to the transfer analysis.

When, as here, there is a centralized location for the events and witnesses, there is good cause to transfer to the centralized location.  *See Odom v. Microsoft Corp.*, 596 F.Supp.2d 995, 1002 (E.D. Tex. 2009), citing *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008).  The fact that the District of Arizona is a venue with absolute subpoena power for all but two non-party witnesses weighs heavily in favor of transfer.

### c.    *The Convenience/Cost of Attendance Favors Transfer*

The convenience and cost of attendance for witnesses is an important factor in the transfer calculus.  This factor is analyzed by giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding."  *In re Volkswagen I*, 371 F.3d at 204.  While all potential material and relevant witnesses must be taken into account, the Fifth Circuit "gives more weight to the convenience of nonparty witnesses."  *See In re Genentech*, 566 F.3d at 1343.  In assessing this factor, the Fifth Circuit applies the "100-mile Rule."  *Id.*  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re Volkswagen I*, 371 F.3d at 204-05.  Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time.  *See id.* at 204, n.3.

In this case, convenience weighs heavily in favor of a transfer to the District of Arizona because it is more convenient for non-party witnesses.  This District and the District of Arizona are approximately 1,215 miles apart—considerably more than 100 miles.  As shown above, substantially all of the third-party witnesses reside in Arizona.  Key non-party witnesses Peters and Schmit live and work in or near Phoenix.  Peters Decl. at ¶ 2; Schmit Decl. at ¶ 2.  Neither Peters nor Schmit have ever been to Marshall, Texas, and they do not routinely travel anywhere

in the State of Texas.  Peters Decl. at ¶12; Schmit Decl. at ¶ 15.  It will be very inconvenient for those witnesses to travel to Marshall for trial.  Peters Decl. at ¶ 12; Schmit Decl. at ¶ 15.

Members of the Salt River Pima-Maricopa Indian Community are likely to be non-party witnesses.  Travel to Phoenix for those witnesses is clearly more convenient and less costly than travel to Marshall.  Venue in Phoenix means that tribe members can drive to the courthouse and return home every evening.  Venue in Marshall would require tribe members to leave home, travel over 1,000 miles to a location to which they have no connection or business interests, to serve as witnesses in this case.  Likewise, the other Arizona non-party witnesses (identified in Section III(D) above) can drive to the courthouse in Phoenix will not incur the inconvenience, additional time, and cost of travel to Marshall, Texas.  The great distance these non-party witnesses will be required to travel weighs heavily in favor of transfer to Arizona.  *In re Volkswagen II*, 545 F.3d at 317 ("[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.").

Only two non-party witnesses are located outside the Phoenix area:  Reising and Malchiodi.[11]  Reising is frequently in the Phoenix area on business related to the FliteShop development, and appearing for trial in Phoenix is reasonably convenient for him.  Reising Decl. at ¶ 12.  Indeed, Reising agrees to voluntarily appear for trial in Phoenix, Arizona.  Reising Decl. at ¶ 12.  On the other hand, attending trial in Marshall, where neither Reising nor Malchiodi travel for business, is inconvenient and will force them to incur unnecessary expense.  Malchiodi Decl. at ¶ 6; Reising Decl. at ¶ 12.  Travel to Phoenix is no more burdensome than travel to Marshall for Reising.  Reising Decl. at ¶ 12.  And, for Malchiodi, Phoenix is closer and air travel more convenient and less expensive than to Marshall.  Chang Decl. at ¶ 4.

Although less important to the transfer analysis, transfer to Arizona will not be inconvenient for the party witnesses.  No party is located in the Eastern District of Texas, and air

---

[11] Malchiodi, a California resident, is not subject to the court's subpoena power either in Texas or Arizona.

travel to Phoenix is more convenient for both parties. Plaintiff iFLY is located in Austin, Texas; there are daily direct flights from Austin to Phoenix, and no direct flights from Austin to Marshall. Chang Decl. at ¶ 5. The cost to iFLY flying to Phoenix or flying to Marshall is similar. Chang Decl. at ¶ 5. For ISG, however, Phoenix is much more convenient. There are direct flights from Germany to either Dallas or Phoenix, and each is equally long and expensive. Traveling into Marshall, however, will require additional travel from Dallas, making Marshall much more inconvenient and expensive for ISG. Chang Decl. at ¶ 6.

The convenience and cost of attendance for witnesses' factor overwhelmingly favors transfer to the District of Arizona.

### d.    *"Other Practical Problems" Favor Transfer*

The "place of the alleged wrong" or "location of the operative events" is also an important factor in the Section 1404(a) analysis, particularly in patent infringement cases. *See Laitram v. Hewlett-Packard Co.*, 120 F.Supp. 2d 607, 609-10 (E.D. La. 2000) ("Relevant considerations in determining the center of gravity in a given case include the location of a product's development, testing, research, and production, and the place where marketing and sales decisions were made."); *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp.2d 370, 375 (S.D.N.Y. 2006) (transferring patent infringement action to venue where the relevant products were designed, developed, and produced); *see also See Proshot Golf v. Leading Edge Techs.*, Case No. 3:96-cv-1906-D, 1996 WL 673265, at *2 (N.D. Tex. Oct. 31, 1996) (holding the 'center of gravity' of activity relating to the infringement suit is logically the place where the infringing party designed and manufactured the technology.").

Here, the "center of gravity" or "locus of operative facts" is undoubtedly Phoenix, Arizona. FliteShop's efforts to design and develop an indoor skydiving simulator, marketing efforts, and operational plans are all centered in Phoenix.

iFLY's request for injunctive relieve also raises other practical problems (or even due process problems) with respect to enforcing any injunctive relief if this case remains in East

Texas.  Even if this Court were to conclude it has personal jurisdiction over ISG, it lacks jurisdiction over the individual members of FliteShop Phoenix LP and the Salt River Pima-Maricopa Indian Community, and will not have the required jurisdiction to enforce injunctive relief if ordered after trial.  The Arizona's Court's ability to exercise broader personal jurisdiction is an important practical reason to transfer this case to the Arizona Court.

### 3.    The Public Interest Factors Favor Transfer to Arizona

Three of the public interest factors favor transfer, and one is neutral.  On whole, these factors favor transfer to the District of Arizona.

#### a.    *Administrative Difficulties Flowing From Court Congestion Is Neutral*

Court congestion is relatively equal in both courts.  During the twelve month period between June 2013 and June 2014, the median time interval from filing to disposition in this Court and the District of Arizona differed by approximately two months.[12]  Thus, this factor is neutral.

#### b.    *The Local Interest Factor Favors Transfer*

The local interest factor takes into account the preference to have localized interests decided at home.  *In re Volkswagen I*, 371 F.3d at 206.  This factor addresses the "factual connection" that a case has with both the transferee and transferor venues.  *See id*.  As the Fifth Circuit has made clear, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *Id.*, citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09 (1947).

Arizona has a dominant interest in resolving the infringement issues in this case.  The proposed skydiving simulator is to be built in Phoenix, Arizona.  The economic impact of decisions flowing from this infringement lawsuit will be felt in Phoenix, not Marshall.  It is the residents of Arizona, including the Salt River Pima-Maricopa Indian Community, local land

---

[12]    http://www.uscourts.gov/uscourts/Statistics/StatisticalTablesForTheFederalJudiciary/2014/june/C05Jun14.pdf

developers, architects and engineers, future employees, local vendors and Arizona-based skydiving enthusiasts who will be impacted by the outcome of this case. No one in East Texas will be impacted by the outcome of this dispute.

The factual connection between this case and the citizens of East Texas is not merely general and insufficient, it is nonexistent—no allegedly infringing product has been, or is proposed to be, sold *in Texas*. *See TS Tech*, 551 F.3d at 1321 (a general interest in preventing infringement in Texas is an insufficient connection). The facts set forth in the Amended Complaint make clear that any infringement, if it has occurred, took place in Arizona. *See* Dkt. No. 16 at ¶¶ 10-11, 24. It is equally clear that there has been no sale or offer to sell an accused product in Texas. It is difficult to imagine any interest that citizens in the Eastern District of Texas would have that would justify having an East Texas jury decide this case. The local interest factor heavily favors transfer to District of Arizona.

### c.    *Familiarity With The Governing Law Favors Transfer*

All federal courts are familiar with patent law and are equally capable of deciding the patent infringement claims of the Amended Complaint. Familiarity with Arizona tort law, however, favors transfer to the Arizona Court.

ISG is likely to plead tortious interference and/or unfair competition counterclaims arising under Arizona law. The state law counterclaims arise from attempts by iFLY's Alan Metni to convince Reising to terminate his business relationships with the FliteShop partners and ISG. Specifically, Metni threatened litigation, claiming that his patents covered all vertical wind tunnels in the United States. Reising Decl. at ¶ 11. But iFLY does not have U.S. patent rights covering *all vertical wind tunnels*. Such wind tunnels have been used in the United States for decades, a fact that Metni unquestionably knows. Metni's threats of litigation for the use of any wind tunnel other than iFLY's (irrespective of iFLY's patent coverage) to entice Reising to end his business relationships in Arizona give rise to tortious interference and/or unfair competition

claims under Arizona law.  The Arizona District Court will be more familiar with Arizona state law causes of action.  This factor weighs in favor of transfer to the District of Arizona.

> **d.**    ***The Avoidance of Unnecessary Conflict of Laws Favors Transfer***

Federal patent law governs this case regardless of its venue, and the Arizona Court will not be called upon to apply Texas law.  As discussed above, the Arizona Court may be called upon to decide state tort causes of action.  This factor favors transfer to the District of Arizona.

## V.    CONCLUSION

This Court lacks personal jurisdiction over ISG.  ISG has not directed its actions—intentionally or otherwise—into Texas.  To the extent activities related to the Phoenix project have occurred in Texas, they are the efforts of non-parties not attributable to ISG.  Even if ISG's attenuated contacts were found to be "minimal contacts" sufficient to support the first prong of the *Akro* test, there is still no basis for personal jurisdiction because the alleged acts of infringement all occurred in Arizona.  They do not "arise from" or "relate to" ISG's contacts with Texas.  On these facts, the exercise of jurisdiction by Texas is unreasonable and unfair.

If the Court concludes it has personal jurisdiction, the case should nonetheless be transferred to the District of Arizona.  All the private interest factors strongly weigh in favor

///

///

///

///

///

///

///

///

transfer to the District of Arizona.  Three of the four public interest factors favor transfer and the remaining one is neutral.  The District of Arizona is a clearly more convenient forum for the resolution of this dispute.

Dated:  March 27, 2015                    Respectfully submitted,

                                          */s/ Patricia L. Peden*

                                          Patricia L. Peden (CA Bar No. 206440)
                                              *(Admitted in the E.D. Texas)*
                                          Duane H. Mathiowetz (CA Bar No. 111831)
                                              *(Admitted in the E.D. Texas)*
                                          Rick C. Chang (CA Bar No. 209515)
                                              *(Admitted in the E.D. Texas)*
                                          NOVAK DRUCE CONNOLLY BOVE + QUIGG LLP
                                          555 Mission Street, Thirty-Fourth Floor
                                          San Francisco, CA 94105
                                          Telephone:  (415) 814-6161
                                          Facsimile:   (415) 814-6165
                                          patricia.peden@novakdruce.com
                                          duane.mathiowetz@novakdruce.com
                                          rick.chang@novakdruce.com

                                          *Attorneys for Defendant,*
                                          *Indoor Skydiving Germany, GmbH*

## CERTIFICATE OF SERVICE

I certify that on March 27, 2015, the foregoing Defendant's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and, Alternatively, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), Affidavits of Rick Chang, Andy Malchiodi, Boris Nebe, Jason Peters, Max Reising, and Gary Schmit in support thereof, and Proposed Order were filed electronically using the Court's ECF system, which will electronically serve the same upon all counsel of record.

/s/ Patricia Peden
Patricia Peden

<u>CERTIFICATE OF CONFERENCE</u>

On March 18, 2015, attorneys Patricia L. Peden and Rick Chang, representing Defendant Indoor Skydiving Germany, GmbH, conferred with attorneys Stephen Hash and Shannon Kidd, representing Plaintiff, iFLY, regarding Defendant's Motion to Transfer Venue.  In accordance with the meet and confer requirement in Local Rule CV-7(h), Defendant's counsel identified the District of Arizona as the appropriate venue and identified witnesses and documents in that district.  Plaintiff identified witnesses located in Texas generally, but was not prepared to identify specific witnesses or documents in the Eastern District of Texas.  As defendant understands it, plaintiff opposes ISG's Motion to Transfer because it believes venue is proper in the Eastern District of Texas.  Accordingly, the parties are at an impasse.